DENVER & R. G. R. CO. v. BOLOGNESE.

No. 2585.    Decided August 11, 1914 (143 Pac. 129).

1. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT. Though there be conflicting evidence, there being good and sufficient evidence to support findings of fact, they will not be disturbed on appeal. (Page 73.)

2. EMINENT DOMAIN—RIGHT OF WAY THROUGH PUBLIC LANDS—TRAMWAY—"RAILROAD." A tramway, along a steep mountain side, 2¾ miles long, with a twenty-inch gauge and twelve-pound rails, built by a railroad company from the end of its steam railroad, and leased to and operated by mineowners for hauling ore from and supplies to the mines, the cars being ore cars of two to three tons' capacity, drawn up by horses and let down by gravity, is not a "railroad" within Act Cong. March 3, 1875, c. 152, 18 Stat. 482, entitled "An act granting to railroads the right of way over the public lands of the United States." (Page 74.)

Appeal from District Court, Third District, *Hon. T. D. Lewis*, Judge.

Action by Denver & Rio Grande Railroad Company against Guy Bolognese.

Vol. 45—5

Judgment for defendant.  Plaintiff appeals.

AFFIRMED.

*Van Cott, Allison & Riter* for appellant.

*Weber & Olson* for respondent.

STRAUP, J.

Plaintiff's predecessor, the Camp Floyd Railroad Company, organized in 1872, constructed in 1873 a narrow-gauge steam railroad from Sandy to Bingham Canyon, Salt Lake County, a distance of 16.13 miles.  In the fall of 1875 it also built along a steep mountain side above the bed of the canyon a tramway from Bingham Canyon station to what is known as the Spanish mines farther up the canyon a distance of 2.76 miles.  To avail itself of the provisions of the act of Congress entitled ''An Act granting to railroads the right of way through the public lands of the United States,'' approved March 3, 1875 (Chapter 152, 18 Stat. 482) it, in September, 1875, filed with the Secretary of the Interior its articles of incorporation and proof of its organization and in September, 1876, filed with the register of the United States Land Office at Salt Lake City a profile and map of its road then built from Sandy to the Spanish Mines, which was' approved by the Secretary of the Interior in October, 1876.  In 1881 the plaintiff, a railroad corporation, acquired all the rights and privileges of the Camp Floyd Railroad Company in and to the railroad and tramway.  Below the tramway and along the canyon the defendant and his predecessors, since 1872, openly and uninterruptedly as owners, occupied a parcel of land 55.4 feet by 64 feet, known as lot 12, block 5, plat ''A,'' Wilkes' Official Plat of the Town of Bingham Canyon, and since 1872 maintained and occupied buildings thereon, and about four years prior to the commencement of this action the defendant constructed a two-story brick building thereon at a cost of about $20,000; and, as the record shows, other buildings, dwellings, and store buildings, were constructed, occupied and maintained along the bed of the canyon below the tramway since 1872.  In 1876 a sub-

division of land containing 40 acres, including the parcel claimed by the defendant, was patented by the United States Government to David H. Bently, which parcel, by *mesne* conveyance from Bently, was conveyed to the defendant. The patent so granted to Bently contained no reservation for railroad rights of way or railroad purposes.

Now the plaintiff claims title to one hundred feet of ground on either side from the center of the tramway. A line extending horizontally one hundred feet from the center of the tramway takes in the premises claimed by the defendant along the bed of the canyon and below the tramway. This action was brought to quiet title in the plaintiff to one hundred feet on each side of the tramway, including the parcel so occupied and claimed by the defendant. The defendant denied plaintiff's title, pleaded title in himself to the parcel occupied and claimed by him, and by counterclaim prayed that the title thereto be quieted in him.

The case was tried to the court. The findings show:

"First. That the plaintiff now is, and for several years last past has been, a railroad corporation duly organized and existing under and pursuant to the laws of Colorado, and Utah, and is, and has been for several years last past, the owner of, and engaged in operating as a common carrier a line of railroad in said states, together with various branch lines, and that there is now, and for several years last past has been, a branch owned and operated by the plaintiff and commonly known as the Bingham Branch, connecting with and leading from the plaintiff's main line at Bingham Junction, now known as Midvale, Salt Lake County, State of Utah, and extending to Bingham Canyon, in Salt Lake County, Utah.

"Second. That on September 20, 1872, the Bingham Canyon & Camp Floyd Railroad Company was duly organized as a railroad corporation under the laws of Utah Territory, and by its articles of incorporation was authorized and empowered to build, construct, and operate a railroad beginning at Sandy, Salt Lake County, Utah, and from that place in a general westerly direction through Bingham Canyon and thence on to the town of Lewiston in Camp Floyd mining

district, Tooele County, Utah; the distance between these two termini being about thirty-five miles. That in the year 1873 that company, under its articles of incorporation, built a narrow-gauge steam railroad track from Sandy, Utah, to Bingham Canyon, Utah, a distance of 16.13 miles, along a route between Sandy and Lewiston aforesaid, and ever since that year locomotives and cars propelled by steam power have been operated by it and its successors as common carriers over said line of railroad between said points. That in the fall of 1875 that company constructed, along a route to Lewiston aforesaid, a tramway from the end of the aforesaid narrow-gauge steel railroad in Bangham Canyon to and across the west half of the east half of the northwest quarter of section 26, Township 3 south, range 3 west, Salt Lake Meridian, to what is known as the Spanish Mines, a distance of about .2.76 miles, completing the same to that point in the fall of 1875 and the early winter of 1876, being 2.76 miles of route referred to upon the map and profile hereinafter mentioned, and the premises hereinafter described in finding 5 are within a line drawn parallel to and 100 feet distant from the center of said track.

"That in September, 1875, the Bingham Canyon & Camp Floyd Railroad Company, for the purpose of availing itself of the provisions of the Act of Congress entitled 'An Act granting to railroads the right of way over the public lands of the United States,' approved March 3, 1875, filed with the Secretary of the Interior a copy of its articles of incorporation and due proof of its organization under the same, which were accepted and approved by him September 20, 1875; and that company for the like purpose, in September, 1876, filed with the register of the United States Land Office at Salt Lake City, Utah, which was the district where the lands over which its said road was built were located, a profile and map of its road as then built between Sandy and the Spanish Mines aforesaid, which was approved by the Secretary of the Interior October 20, 1876. This profile and map showed the line of route to be over and across the said west half of the east half of the northwest quarter of said section 26, township 3 south, range 3 west, Salt Lake Meridian,

and the line or route described in the complaint is the same line or route as shown on said map and profile. In 1881, all of the property and rights of the Bingham Canyon & Camp Floyd Railroad Company were duly transferred to the Denver & Rio Grande Western Railway Company, a corporation, the predecessor of the plaintiff, and were afterward transferred by proper conveyances to the plaintiff which is now the owner of the same.

"That said tramway was built with what is known as twelve-pound rails, which were laid within a space of twenty inches between the rails. ·That the size of the ties upon which said rails were laid was four by four inches and four feet in length. The said tramway was too small and was not intended for use as an ordinary steam railroad equipped for the usual steam railroad rolling stock, and that said tramway was wholly unfit, insufficient, and impossible for steam railroad purposes. That said tramway was first used in the spring of 1876 and was used as a tramway and for tramway purposes only. That small tramway cars of a capacity of about three tons were used on said tramway. That said tramway cars were pulled upgrade by horses to the Spanish Mines and other mines to which said tramway extended or branched, and came downgrade by gravity and were used for carrying ores from the Spanish Mines and from other mines to which said tramway extended or branched, to the steam railroad terminal depot in Bingham Canyon, Utah, at which point ores carried in said tram cars were transferred from said tram cars to the steam railroad cars at said Bingham Canyon station, the ore being dumped from said tram cars into said steam railroad cars. That some time after July 10, 1876, said tramway was enlarged to twenty-four inches in width and thereafter to thirty-six inches in width, but that the same was intended as a tramway only, and was wholly unfit and insufficient and impossible for steam railroad purposes, and was used at all times when in use as a tramway for hauling ore from and supplies to the miners to which it extended, and not otherwise. That said tramway from the time of its construction until about 1881 was operated and maintained by the Bingham Canyon & Camp Floyd

Railroad Company; ores tendered it for shipment from the various mines along the route of the tramway being hauled and transported by it from such mines over the tramway in tram cars to the steam railroad and thence over the steam railroad to destination. Also, supplies were hauled and transported by that company over the tramway to such mines, a toll or charge being exacted by it for such services. That thereafter said tramway was leased from time to time by mine owners and operators in Bingham Canyon for hauling of their ore to the said terminal of the said Bingham Canyon & Camp Floyd Railroad Company, and its successors at Bingham Canyon, Utah, and at other times was leased by various parties who contracted for hauling ore over the said tramway and did haul over it the ore of certain mine owners and operators in Bingham Canyon, Utah. That said tramway, since about 1881, was operated only at intervals for the purposes aforesaid, depending on the output of the mines; and that the conditions aforesaid continued until about 1900. That said tramway was not operated on any regular schedule, and that the tramway cars or trains had no fixed time for starting and no fixed time for returning, making as many trips as it was necessary to haul ore, nor was said tramway operated for the use of the public generally. That it carried no freight except as herein stated and did not carry passengers except as a matter of favor, and that there is no evidence that it had either freight or passenger rates. That the mine owners or operators leasing it used it for their own private purposes in bringing their ores to the railroad, and that other lessees of the tramway contracted with the mine owners or operators for hauling the ores on such terms and at such prices as the parties might agree upon. That freight was carried for no one except the persons who were engaged in bringing ores to the said steam railroad depot at Bingham Canyon for transportation from that point, but no evidence was adduced that while said tramway was operated by the Bingham Canyon & Camp Floyd Railroad Company that company ever refused to carry over said tramway any freight tendered it for shipment. That all freight coming into or going out of Bing-

ham Canyon was handled and billed from said steam railroad terminal at Bingham Canyon. That there was no railroad station or railroad agency or railroad depot established or maintained at any point on said tramway; but the ores transported over said tramway were received by the Bingham Canyon & Camp Floyd Railroad Company at the various mines along the route of said tramway, and from the time so received until transported to and delivered at destination points were in the possession of that company, and likewise the supplies hauled over said tramway to said mines continued to be in the possession of that company until delivery was made at said mines to the owners to whom the same were consigned. That there were no facilities there for the public to apply for transportation of either freight or passengers at any point above the terminus of the said steam railroad; and that the operators of the tramway refused to carry passengers thereon; and that the only public railroad station in Bingham Canyon at which all passengers and freight at Bingham Canyon arrived and departed was at said terminal steam railroad depot of the said Bingham Canyon & Camp Floyd Railroad Company and its successors. That a railroad was never operated over the route of said tramway until the said tramway was removed and a standard steam gauge railroad was built in the place of the tramway in about the year 1900, over which said railroad engines and cars propelled by steam were thereafter operated.

"Third. That said tramway was built along the steep mountain side upon a steep grade, and that the route and right of way claimed by the plaintiff herein covers the premises described in defendant's answer and which said premises are hereinafter described.

"Fourth. That the said premises have been occupied openly since 1872, and buildings have been there ever since said date, and that the same are included in the west half of the east half of the northwest quarter of section 26, township 3 south, range 3 west, Salt Lake Meridian, and that the subdivision just described was duly located by Valentine Scrip in the United States Land Office at Salt Lake City, Salt Lake County, Utah, on February 9, 1876, by David H.

Bently. That on July 10, 1876, said subdivision, containing forty acres, which includes the premises hereinafter described, was patented by the United States Government to David H. Bently; and that said patent contained no reservation for railroad rights of way or railroad purposes. That by good and sufficient *mesne* conveyance from said David H. Bently, the defendant herein is vested with legal title to said premises; and that ever since July 10, 1876, said premises have been continuously occupied, used, and owned in fee simple by the defendant and his predecessors in title and interest; and that they have paid the taxes thereon for more than seven years prior to the commencement of this action; and that defendant is the owner in fee simple of said premises.

"Fifth. The premises of the defendant and which he and his predecessors have occupied and used and owned ever since July, 1876, are described as follows: * * *

"Sixth. That on the trial the plaintiff, in support of its allegation of ownership expressly and exclusively relied on the aforesaid Act of Congress approved March 3, 1875, and the various proceedings taken thereunder by the Bingham Canyon & Camp Floyd Railroad Company, as the foundation of plaintiff's asserted title to the lands in question.

"Seventh. That section 26, township 3 south, range 3 west, Salt Lake Meridian, in which the premises in controversy are located, as well as other premises adjacent thereto, was first surveyed under the authority of the United States in June, 1873. The survey thereof was approved by the United States Surveyor General May 20, 1874; and on May 20, 1874, a duly certified copy of the town-site plat of survey of the premises thus surveyed was filed in the United States Land Office at Salt Lake City, Utah. That the records of the United States Land Office of Salt Lake City, Utah, in which district the lands in question are located, show that prior to February 9, 1876, no entry had been made on or any right initiated in or to the west half of the east half of the northwest quarter of said section 26, where the premises in question are located."

The conclusions of law are:

"First. That the plaintiff has acquired no right of way over, through, or across and has acquired no interest whatsoever in said premises of the defendant under or pursuant to the terms of the Act of Congress of March 3, 1875, or otherwise, or at all; that the tramway built by the plaintiff's predecessors and operated as in said findings of fact stated was not a railroad within the meaning of said Act of Congress of March 3, 1875; that neither the plaintiff nor its predecessors in interest ever complied with the said Act of Congress of March 3, 1875, in so far as its alleged right of way over the premises of the defendant herein is concerned, and that the plaintiff has no right, title, or interest in said premises of the defendant; that the tramway referred to in the findings of fact never was operated as a common carrier, and that neither the Bingham Canyon & Camp Floyd Railroad Company nor any of its lessees ever operated said tramway as a common carrier and never were subject to any of the obligations of a common carrier; that said tramway was never a railroad within the meaning of the Act of Congress of March 3, 1875, and that it was not a railroad within the meaning of the said Act of Congress at or before the time of granting the government patent to D. H. Bently, the predecessor in interest of the defendant; that defendant's title to the premises described in the foregoing findings of fact is good and valid, and that his title to said premises should be quieted, and that defendant is entitled to a judgment and decree as prayed for in his counterclaim, and for his costs herein expended, and that plaintiff is entitled to a decree quieting its title against the defendant as to the premises described in its complaint, outside of the premises of defendant described in finding five."

The court accordingly rendered judgment quieting title in the defendant to the parcel occupied and claimed by him. Plaintiff appeals.

From the findings and conclusions it is seen that the case turned on the question of whether the tramway was such a "railroad" within the meaning of the Act of Congress approved March 3, 1875, as to entitle the plaintiff and its predecessors thereunder to claim 100 feet

of ground on either side of the center of the tramway. The court on the evidence found and on the law held against the plaintiff. The principal, and about the only, finding questioned by plaintiff, is the finding that the tramway was not operated or used by the plaintiff or its predecessor for the use of the public or in carrying on business of a common carrier or for general railroad business or purposes. While the evidence as to that, in some particulars, may be in conflict, yet we think the fair preponderence and greater weight of the evidence support the finding. There at least is good and sufficient evidence to support not only this finding but all the findings. They are therefore approved by us.

The further contention is that, notwithstanding the findings, the tramway, as found by the court, nevertheless was such a railroad within the meaning of the congressional act as to entitle the plaintiff to one hundred feet of ground from the center thereof, and thus was the plaintiff the owner of the parcel occupied and claimed by the defendant within such strip. We think the conclusions and judgment of the court to the contrary are right. The findings and the evidence show that plaintiff's predecessor built a narrow-gauge steam railroad to Bingham Canyon, a distance of 16.13 miles. No railroad business was done beyond that point. From there, along a steep mountain side above the bed of the canyon, to the Spanish Mines, was constructed the tramway a distance of 2.76 miles. The findings and the weight of the evidence show that it was put there to haul ore from the mines and in that connection supplies to the mines. It was leased to mine owners, who used and operated it only for such purposes. It was not suitable for any other purpose, and certainly not for the carriage of passengers or freight, or for carrying on a general railroad business; nor was it in fact, by the clear preponderance of the evidence, used or operated for any purpose except to haul ore from and supplies to the mines. The gauge was but a twenty-inch gauge; the rails but twelve-pound rails; the cars operated over it but ordinary ore cars of the capacity of from two to three tons drawn up to the mines by horses and let down by gravity. Cars operated over the narrow-gauge road to Bingham Can-

yon station could not be operated over the tramway, and those over the tramway not over the narrow-gauge. The tramway in no sense was a continuation of the steam road. It was constructed, used, and operated entirely separately from and independently of the steam road. We think the findings show it was not a railroad and was not used or operated as such and was not constructed or intended, and was not suitable for railroad purposes.

The judgment is affirmed, with costs.

McCARTY, C. J., and FRICK, J., concur.